IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TERENCE C. EVERETT,
       Plaintiff,

vs.                                          Case No.: 5:07cv284/RS/MD

MARIANNA POLICE DEPARTMENT, et al.,
       Defendants.

## O R D E R

       This cause is before the court upon plaintiff's civil rights complaint filed pursuant to 42 U.S.C. §1983 (doc. 1) and his motions to proceed *in forma pauperis* (docs. 6, 7). Good cause having been shown, leave to proceed *in forma pauperis* will be granted. However, from a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named defendants. The court will therefore allow the plaintiff an opportunity to clarify his allegations in an amended complaint.

       Plaintiff, proceeding *pro se*, has filed this suit grounded on allegations that he was wrongfully seized during a traffic stop in Marianna, Florida on September 20, 2007. Named as defendants in this action are the Marianna Police Department and two police officers: Patrolman Jonathan P. Smith and Sergeant Matt Vickery. (Doc. 1, p. 2). Specifically, plaintiff alleges that at approximately 12:00-12:30 a.m., he was pulled over by Patrolman Smith for a traffic violation (plaintiff's taillight was out). After running a check on plaintiff's driver's licence, Smith discovered that plaintiff was wanted for failure to appear. Smith requested that plaintiff exit his vehicle and, after plaintiff complied, Smith cuffed plaintiff's left wrist. Sergeant Vickery approached and ordered plaintiff to put his hands on the car. Plaintiff complied. According to plaintiff, Vickery then put a choke hold on plaintiff,

threatening, "I am going to beat your ass down here. I am going to break your neck. You are going to sleep." (Doc. 1, p. 3). Vickery choked plaintiff until he lost consciousness. At some point, patrolman Smith punched plaintiff in the mouth and eye. Sergeant Vickery had his knee in plaintiff's back, and a mace can pressed down into plaintiff's ear. As plaintiff was regaining consciousness, he saw several other officers approaching. One officer put his foot on plaintiff's neck. Plaintiff was taken to Jackson Hospital, where he spent two days in the intensive care unit. Plaintiff states that throughout this episode, his girlfriend was in the car and witnessed the assault. He states that Vickery told her "that she need [sic] to stop hanging around with my kind." Plaintiff notes that he (plaintiff) is black and his girlfriend is white. As a result of the beating, plaintiff sustained unidentified "life time bodily injuries." (*Id.*). In the Statement of Claims section of the complaint form where plaintiff is directed to identify what rights under the Constitution, laws, or treaties of the United States he claims have been violated, plaintiff states:

> (1) Sgt. Matt Vickery use[d] a[n] illegal choke hold that FDLE has band [sic] law enforcement from using. Police cover-up. (2) I was racil profile [sic] in this stop. Attempt murder. (3) An affidavit that Patrolman Smith sign charging me with R.A.W.V. perjury. (4) Racial profiling.

(*Id.*, p. 4). As relief, plaintiff seeks unspecified monetary damages as well as injunctive relief (defendants' dismissal from their duties and the filing of "charges" against them). (*Id.*).

As an initial matter, plaintiff is advised that he will be unable to obtain the injunctive relief he seeks. One form of relief requested by plaintiff is the termination of defendants' employment. It is beyond the authority of the court to consider this type of relief because the court would thereby become too "enmeshed in the minutiae of [penological] operations." *LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993) (quoting *Bell v. Wolfish*, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1974)). Furthermore, plaintiff's claim that the defendants should be criminally charged for their alleged conduct is frivolous. As a private citizen, plaintiff "has no judicially cognizable interest" in the criminal prosecution of another. *Otero v. United States Attorney Gen.*, 832 F.2d 141 (11th Cir. 1987) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)); *see also Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (holding that

a private citizen has no authority to initiate a criminal prosecution); *Sattler v. Johnson*, 857 F.2d 224, 226-27 (4th Cir. 1988) (holding that a private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted). Thus, this court has no authority to file criminal charges against an individual, nor can this court direct that criminal charges be filed.

It is further noted that the Marianna Police Department is not a proper party to this suit. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing FED. R. CIV. P. 17(b)). Florida has examined the question as to the correct party in interest as it pertains to police departments and found the city or municipal corporation to be the proper party. *See Mann v. Hillsborough County Sheriff's Office*, 946 F.Supp. 962, 970-71 (M.D. Fla. 1996); *Post v. City of Fort Lauderdale*, 750 F.Supp. 1131 (S.D. Fla.1990); *Florida City Police Dep't v. Corcoran*, 661 So.2d 409 (Fla. Dist. Ct. App. 1995). In so finding, the courts have reasoned that the police department is the vehicle through which the city fulfills its policing functions. Therefore, the Florida courts have found that the city police department is not a legal entity and has no legal existence separate and apart from the city. *Corcoran*, 661 So.2d at 410 (finding that the "Police Department . . . does not have the capacity to sue and be sued"); *Eddy v. City of Miami*, 715 F.Supp. 1553, 1556 (S.D. Fla. 1989) ("[w]here a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit" absent some allegation of conduct attributable to the department itself). Plaintiff's complaint contains no allegations of conduct attributable to the Marianna Police Department. Therefore, this defendant is not a proper party in this litigation and must be dismissed.

To the extent plaintiff seeks to hold the City of Marianna liable because it employed the individuals who engaged in the alleged misconduct, the law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of *respondeat superior*. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611 (1978). Rather, only deprivations undertaken

pursuant to governmental "custom" or "policy" may lead to the imposition of governmental liability. *Glech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003); *Cagle v. Sutherland*, 334 F.3d 980 (11th Cir. 2003)*; Griffin v. City of Opa-Locka,* 261 F.3d at 1307 (citing *Floyd v. Waiters*, 133 F.3d 786, 793 (11th Cir. 1998)). Thus, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a particular municipal "policy" or "custom" that caused the constitutional injury. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) *(*quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)); *see also Griffin, supra*. Finally, plaintiff must show that a county policy or custom was the "moving force" that caused the alleged constitutional violations to establish the county's § 1983 liability. *McElligott v. Foley*, 182 F.3d 1248, 1259 (11th Cir. 1999); *Young v. City of Augusta, GA.*, 59 F.3d 1160, 1171 (11th Cir. 1995).

To establish a county policy, a plaintiff may identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Glech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690-91, 694); *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). With respect to the latter option, a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" towards the misconduct. *Griffin, supra* (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs must show that the county has a custom or practice of permitting certain actions. *Glech*, 335 F.3d at 1330 (internal quotations omitted); *Holmes v. Kucynda,* 361 F.3d 1069, 1078 (11th Cir. 2003).

As to plaintiff's claims against the remaining defendants, he is advised of the following. In any section 1983 action the initial inquiry must focus on whether two essential elements are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and

> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

With respect to plaintiff's claim against defendant Vickery for his use of an "illegal choke hold," plaintiff is advised that the fact that such a procedure may have been "banned" by the Florida Department of Law Enforcement does not render it unconstitutional. To be actionable under § 1983, plaintiff must allege a <u>constitutional</u> violation. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."); *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) ("[A] violation of state law--even assuming one occurred in this case--does not per se make a state actor liable under § 1983. State law violations do not form the basis for imposing § 1983 liability. ") (citing *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995)); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).

In considering whether Vickery's conduct rose to the level of a constitutional violation, the following legal principles apply. Claims of unreasonable search and seizure implicate the protections of the Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, which applies to the states via the Fourteenth Amendment. *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002). When a plaintiff alleges excessive force by a law enforcement officer, he must show that the officer's conduct was objectively "unreasonable." *Graham v. Connor*, 490 U.S. 386, 395-97, 109 S.Ct. 1865,104 L.Ed.2d 443 (1989). Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action given the facts

and circumstances confronting him. *Id.*, at 397, 109 S.Ct. 1865; *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) ("The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer.").

The Supreme Court has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Consequently, in applying the "objective reasonableness" standard, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Moreover, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make spit-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.*, at 396-97.

In light of all of these considerations, the assessment of a police officer's use of force is a highly factual inquiry. When determining whether an officer's use of force was objectively reasonable, a court should consider "'(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.'" *Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1991) (quoting *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)). In short, the Fourth Amendment prohibits force that is objectively unreasonable, both in the decision to implement the force and in the degree of force. *Graham v. Connor*, 490 U.S. at 394; *Cottrell v. Caldwell*, 85 F.3d 1480, 1492 (11th Cir. 1996). In amending, if plaintiff intends to assert a claim under the Fourth and Fourteenth Amendments, he should ensure that his allegations meet the foregoing requirements.

As to plaintiff's claim of "racial profiling," he is advised that there is no federal cause of action for racial profiling. Rather, claims that similarly situated individuals have been treated differently on the basis of race arise under the Equal Protection Clause. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d

313 (1985) (holding that the Equal Protection Clause requires that the government treat similarly situated people alike). In order "[t]o establish an equal protection claim, a plaintiff must demonstrate that (1) 'he is similarly situated with other p[ersons] who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Florida Parole & Probation Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). In the instant case, even liberally construing plaintiff's *pro se* allegations in a light most favorable to him, he fails to state an equal protection claim. The sole allegation in support of his purported equal protection claim is Vickery's statement to plaintiff's girlfriend that she "need[ed] to stop hanging around with [plaintiff's] kind." However, no reasonable factfinder could infer from that statement that plaintiff's race was the reason Vickery applied force. Nor could one reasonably infer that race was the basis for Smith's stop. Indeed, plaintiff admits that his taillight was out, and further admits that there was an outstanding warrant for his failure to appear. Thus, based on the allegations of the complaint, plaintiff cannot stated an equal protection claim.

  Finally, as to plaintiff's claim that defendant Smith committed perjury in connection with an affidavit which apparently served as the basis for charging plaintiff with resisting an officer with violence, plaintiff's allegations require further factual development. Plaintiff provides virtually no information about defendant Smith's allegedly false statements and the weight they were given in charging plaintiff. *See, e.g., Lancaster v. St. Petersburg Police Dep't*, 2005 WL 1944662, *3 (M.D. Fla. 2005) (holding that plaintiff failed to state a viable § 1983 claim because he did not demonstrate that his constitutional rights were violated in connection with law enforcement officer's alleged false statements in a warrant affidavit). In amending, plaintiff should identify the allegedly false statements, indicate why they were false, and explain the significance of the falsities to the charge of resisting with violence.

  In amending, plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law. If plaintiff determines that he cannot state a claim for relief under 42 U.S.C. § 1983, he should file with the court a notice of voluntary dismissal of this action. If plaintiff chooses

to file an amended complaint, he must completely fill out a new civil rights complaint form, marking it "**Amended Complaint.**"  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form.  In the "Statement of Facts," plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.  If plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint.  In the section entitled "Statement of Claim," plaintiff must state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for the claimed violations. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded.  N.D. Fla. Loc. R. 15.1.   Plaintiff should file the amended complaint with an original signature with the court and keep an identical copy for himself.  Plaintiff should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint.  The court will notify plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment.  Furthermore, plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.  Finally, plaintiff is advised that discovery is premature at this stage of the case and plaintiff should not do any discovery without leave of court.

Accordingly, it is ORDERED:

1. Plaintiff's motions to proceed *in forma pauperis* (docs. 6, 7) are GRANTED.

2. The clerk of court is directed to forward to the plaintiff a civil rights complaint form for use in non-prisoner actions under 42 U.S.C. §1983.  This case number should be written on the form.

*Case No: 5:07cv284/RS/MD*

3.  Within **thirty (30) days** from the date of this order, plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written and submitted on the court form as instructed above.  Failure to submit an amended complaint as instructed will result in a recommendation of dismissal of this action.

DONE AND ORDERED this 25th day of January, 2008.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

*Case No: 5:07cv284/RS/MD*